FILED - LN
January 17, 2017 10:24 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: clw /_____ SCANNED BY: clw/1/18

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

Scott Sedore #210661

(Enter above the full names of all plaintiffs, including prisoner number, in

v.

Duncan MacLaren - Warden

(Enter above the full name of the defendant or defendants in this action.)

2:17-cv-7
Janet T. Neff, U.S. District Judge
Timothy P. Greeley, U.S. Magistrate Judge

## COMPLAINT

I. **Previous Lawsuits**

**CAUTION: The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in this and other federal courts without prepayment of the civil action filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding *in forma pauperis* and require you to pay the entire $400.00 filing fee regardless of whether your complaint is dismissed.**

A. Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility? Yes ☒ No ☐

B. If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

1. Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.

    U.S. District Court (Federal Court) 1:16-CV-903 = Case No.) (6th Circuit - Western District)

2. Is the action still pending? Yes ☒ No ☐

    a. If your answer was no, state precisely how the action was resolved: _____

3. Did you appeal the decision? Yes ☐ No ☐

4. Is the appeal still pending? Yes ☐ No ☐

    a. If not pending, what was the decision on appeal? _____

5. Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit? Yes ☐ No ☒

    If so, explain: This Lawsuit is Against Warden Maclaren - I was at Kinross Corr. facility Between 10/30/14 - 6/4/15 - violated Americans W/Disabilities Act - Denied use of wheelchair.

II. **Place of Present Confinement** Alger Correctional Facility - Munising, Michigan

If the place of present confinement is not the place you were confined when the occurrence that is subject of instant lawsuit arose, also list the place you were confined:

Kinross Correctional Facility - Kincheloe, Michigan

-1-

III. **Parties**

   A. Plaintiff(s)

Place your name in the first blank and your present address in the second blank. Provide the same information for any additional plaintiffs. Attach extra sheets as necessary.

Name of Plaintiff __Scott Sedore #210661__

Address __Alger Correctional Facility - N6141 Industrial Park Drive__
__Munising, Michigan - 49862__

   B. Defendant(s)

Complete the information requested below for each defendant in this action, including whether you are suing each defendant in an official and/or personal capacity. If there are more than four defendants, provide the same information for each additional defendant. Attach extra sheets as necessary.

Name of Defendant #1 __Duncan Maclaren__
Position or Title __Warden (Michigan Dept of Corrections)__
Place of Employment __Kinross Correctional Facility__
Address __4533 W. Industrial Park Drive - Kincheloe, Michigan - 49788__
Official and/or personal capacity? __Official and Personal Capacity__

Name of Defendant #2 _____
Position or Title _____
Place of Employment _____
Address _____
Official and/or personal capacity? _____

Name of Defendant #3 _____
Position or Title _____
Place of Employment _____
Address _____
Official and/or personal capacity? _____

Name of Defendant #4 _____
Position or Title _____
Place of Employment _____
Address _____
Official and/or personal capacity? _____

Name of Defendant #5 _____
Position or Title _____
Place of Employment _____
Address _____
Official and/or personal capacity? _____

IV. **Statement of Claim**

State here the **facts** of your case. Describe how each defendant is personally involved. Include also the names of other persons involved, dates and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets if necessary.

Refer to Additional pages - Labeled "Statement of Claim"

(Last Revised: June 2013)

## IV. Statement of Claim

(1) I am bringing this action against the Above mentioned Defendant, Duncan MacLaren (warden), as a result of his collective efforts, willful, malicious Acts to deny me Access to programs, recreation, yard (fresh air) while I was being held at Kinross Correctional Facility between 10/30/14 - 6/4/15. I was at the time, as I still am, severly disabled Individual as a direct result of a 10/4/09 car Accident, and willful neglect by M.D.O.C. - BHCS, Corizon Inc., Corizon medical providers past and present.

(2) Duncan MacLaren acted under "Color of State Law". He acted with Impunity, without Justification to inflict cruel and unusual punishment that served no "Penalogical interest". He created chaos, unjustifiable conditions of confinement for myself, He has not had to answer to anybody for his behavior, and lack of responsibility, and actions that created a perceived punishment upon myself and he had a Duty to act to correct this injustice. He had a duty to protect my civil rights under the 8th Amendment to the U.S. constitution under the theory of "Deliberate Indifference" to my serious medical problems, and he Blatantly violated the American's with Disabilities Act. He refused to let me use a "wheelchair" to Access yard.

(3) The Actions or in-Actions of Duncan MacLaren led to intense Aggravation of my multiple orthapedic issues. It led to further gratuitous pain and suffering. It led to severe physical, emotional, psychological issues/problems. It led to immense pain and suffering In my Case. It led to further Physical injury, Discrimination, embarrasement, humiliation, degradation, Anguish. Duncan MacLaren violated several Michigan Department of corrections - Policy Directives, Operating Procedures, employee work rules, civil service employee work rules. He violated the 8th Amendment to the U.S. constitution, and also the Americans with Disabilities Act.

(4) This treatment contributed to further injuries, High Blood pressure, High cholesterol, Pre-Diabetes, further orthopedic injury and intense pain and suffering by forcing me to become even less active, and forcing me to walk more, be on my feet even longer durations. Prior to this, I used to get alot of activity by wheeling myself around inside my unit, and small yard using a wheelchair, This gave me good cardiovascular action.

(5) If warden MacLaren had acted in a manner that is set forth in my opinion by M.D.O.C. policy and procedure - He would have immediately upon becoming aware of my Ambulation issues, Disabilities, medical needs - ordered my "Transfer" from Kinross Correctional facility immediately - to a facility that could meet my needs. Instead he ignored my needs, and he conspired to keep me at Kinross Correctional facility at the expense of my physical, psychological well being. I would not have been harrassed, discriminated against by Custody staff at Kinross Correctional facility, namely officer Wallace and officer Laponsie. officer Wallace told me one Day "When are you going to leave Kinross, we don't want you here." officer Wallace Burned my television up by "spilling water" in it shortly after my arrival at Kinross during a "shakedown" of my cell. officer Laponsie wrote me a "Bogus" ticket when I asked to use the bathroom during count time, Because I was found "Not Guilty" of that ticket, several other custody officers approached me and harrased me, saying "you think you can do anything you want and get away with it," They said we will see about that.

⑥ At the Direction of Warden Duncan MacLaren, Bureau of Healthcare services staff, corizon medical provider- Penny Rogers (Nurse Practicioner) changed alot of my medical Detail and Special Accomadation orders. That way they could say that my medical needs could be met at Kinross Corr. facility. she did this on 11/3/14, my needs were not ever met, they only caused me more problems, she changed those orders on 11/3/14. Refer to medical Detail orders and Special Accomadation orders prior to my 10/30/14 arrival at Kinross Corr. facility.

⑦ I have not ever been re-imbursed for my television that officer wallace burnedup by spilling a glass of water in it, despite me filing a claim with the state of michigan-"Administrative Board" on the first part of November, 2014. The only way that prisoner's have re-course to get re-imbursed for there property that's lost or destroyed by M.D.O.C. officials. They have purposely delayed and ignored my claim. It don't take over 2-years to decide to re-imburse me or not, I did nothing wrong, officer wallace did.

⑧ Warden MacLaren encouraged M.D.O.C. Administration, non-custody, Custody staff to keep me at Kinross, so he could continue his abuse and torture of me both physically and psychologically. He encouraged custody staff to Harrass me.

⑨ If I was going to a call-out, the only time I was allowed access to a wheelchair-custody staff would want to argue and fight with me, before they would contact the Bureau of Healthcare

services and have my wheelchair Aide/pusher (inmate worker) go get a wheelchair from Healthcare services and come and take me to my call-out. There were no wheelchairs allowed in the Housing units at Kinross corr. facility, when I tried to go outside to the yard on 11/6/14, I was told by custody staff that I could not have a wheelchair on the yard, officer Rigotti told me i could not be on the yard with a wheelchair, I told him, I could not walk the distance to make it to the yard. I had to use the wheelchair. I showed him my medical Detail and special Accomadation orders, he still adamantly told me i could not use a wheelchair to come to the yard, I Begged him, I wrote several grievances about being denied access to the yard. I was forced to stay inside, only going to call-outs while at Kinross Correctional facility, Between 10/30/14 - 6/4/15 i did not get to go to the yard one time, I can not walk the distance to get there, Between 1/4-1/2 mile one way, Refer to grievances, KCF-1411-01207-12z, KCF 1411-01220-06e. The Bureau of healthcare services confirmed that I had a Detail/Accomadation order to allow me to use a wheelchair to go to the yard,

Grievance # KCF-1411-01207-12z signed by Patricia Lamb on 12/11/14. On the same date, Grievance # KCF-1411-01220-doc was responded to and signed by Warden Duncan MacLaren. Warden MacLaren responded, saying no wheelchairs are for prisoners leisure time activities, such as going out to yard.

Warden MacLaren settled that issue, I could not gain any access to outside fresh air unless I had a call-out. He denied me access to recreation programs outside. No if's, and's, or But's. Despite what the BHCS/Corizon Doctors said.

I filed this lawsuit as a direct result. He violated the Americans with Disabilities Act and he was deliberately indifferent to my serious medical needs. I did not get to go outside to yard one time between 10/30/14 - 6/4/15. This led to serious problems for me. Physical, emotional, psychological, Anguish, Frustration, Anger. I felt as though I was being targeted and punished and Discriminated Against for no reason or justification. Warden MacLaren was bound by M.D.O.C. policy and procedures to order a "transfer" to a facility that could meet my needs, but he carried out a personal vendetta against me. Refer to office of Legislative Corrections ombudsman letter to me (Dated September 15, 2015).

(10) When I was going to a call-out in the wheelchair, custody staff on the yard would often stop me on my way to my call-out's, telling me "You know that you cannot go to the yard with that wheelchair." My wheelchair pusher/Aide or myself would have to go to the unit officer and put up with a bunch of verbal abuse because they did not want to continually call Healthcare services to get the wheelchair. We would have to ask them to call and then my wheelchair pusher would go get the wheelchair from them, then he would come back to the Housing unit (1/4 - 1/2 mile walk each way between Housing unit "E" and Healthcare services unit) and pick me up. Then he would push me to my call-out and drop me off. Then he would have to take the wheelchair back to Healthcare unit. Then when my call-out was over, he would have to ask the housing unit officer to call back over to healthcare services and request the wheelchair. Then he would have to go pick up the wheelchair, then come pick me up at my call-out, then take me back to my housing unit (E). Then he would have to take the wheelchair back to healthcare services unit.

(11) Often I would have another call-out within 1/2 hour - 1 hour after previous one, yet I was not allowed to keep the wheelchair at my housing unit during this period of time, so we would continually have to go thru this scenario. My wheelchair pushers had to put up with a lot of verbal abuse from custody staff. They had to walk at least

6-10 miles per day going thru the process of ~~retreiving~~ retreiving a wheelchair to take me to my call-outs, including going to healthcare services at lunchtime to get "ICE" for my foot, and also take me to restricted medication Lines at 8:00 p.m. every night. This led to alot of arguing and problems between me and my wheelchair pusher - who was often forced to take the job as my pusher or face Disciplinary Sanctions called Double "0" Status, if they refused to take the job. This led to alot of unecessary emotional, mental Anguish for me also. I usually needed a new wheelchair pusher every 1-2 weeks. Everybody kept quitting the job because it was so much bullcrap and verbal abuse, harrassment by custody staff. And it was an enormous amount of walking, work just to aquire the wheelchair to take me anywhere. They paid $.84/day for job.

(12) I was eventually moved to another housing unit within Kinross Corr. Facility (unit #F - An open bay /barracks style housing). I was a "Target" by thieves due to my severe disabilities. I was moved to F-unit around May, 2015. Shortly after being moved, my meal Lay-in Detail was cancelled by (NP) Penny Rogers. I went to breakfast one morning and my Brand New Television was stolen. I had lost "2" Televisions within a 6-month period at this point.

After I confronted the people who stole my television several days earlier, on May 17, 2015 - on my way to 8:00pm, "Restricted medication" lines, being pushed in the wheelchair - 2 inmates assaulted me and my wheelchair pusher. They pushed me out of my wheelchair, I had a "puncture" wound to my stomach and several cuts and bruises, my wheelchair pusher was severly beaten. I was placed in the "Segregation unit and eventually transferred on 6/4/15 from Kinross to Muskegon Corr. facility.

(13) Attorney John Streby attempted to contact Warden Maclaren several times, trying to Advocate for my transfer from Kinross correctional facility. State senator Rick Jones wrote a letter to M.D.O.C. Director Daniel Heyn's, Advocating for my Transfer. This letter is dated 11/12/14. Warden Maclaren did everything in his power to avoid speaking with Attorney John Streby when ever he called, Warden MaClaren had his Administrative Assistant speak to Mr. Streby. He refused to return Mr Streby's phone calls. The <u>Legislative corrections ombudsman's office also advocated for my Transfer from Kinross Correctional facility, saying that warden Maclaren was violating the Americans with disabilities Act by refusing to let me use a wheelchair to Access the yard at Kinross.</u> This was between January, 2015 - May, 2015. Refer to letter dated September 15, 2015 (Legislative corrections ombudsman).

● I was not transferred until I was ultimately assaulted on May 17, 2015, I was transferred on 6/4/15.

(14) All the decisions involved in Denying me the use of a wheelchair to gain access to the Kinross yard for recreation and other outside programs, such as sitting at a picnic table, just getting fresh Air, I was kept locked inside a Housing unit, and only received "fresh Air" if I had a call-out.

Warden violated M.D.O.C. Policy Directives and Operating Procedures, Some of these included PD 03.03.130, PD 03.04.100, PD 04.06.160, PD 05.01.140, OP 04.06.160, OP 05.01.140 (A). He also violated the 8th Amendment to the U.S. constitution and Title II to the Americans with Disabilities Act.

This led to further physical, emotional, mental issues, along with further frustration, embarrassment, Discrimination, Degradation, humiliation, Anger, Anguish, verbal abuse by custody staff. Some days I felt so isolated, because I could not go outside to the yard like every other inmate. I was kept locked inside 95% of the time over a 7-month period between 10/30/14 - 6/4/15. I only had access to the Bathroom, a very small dayroom, or my cell/room. This treatment led to an Aggravation of my physical pain and suffering also. It eventually played a Role in my other TV being stolen, and eventually being assaulted on May 17, 2015.

(15) Warden MacLaren directed Healthcare staff (BHCS), corizon medical providers, Non-custody, custody staff to dole out this treatment of changing medical Details, Special Accomodation orders. He directed people to not transfer me for any reason. He directed custody staff to make sure I did not use a wheelchair to go to the yard for any reason, Warden MacLaren doled out this treatment and violation of my civil Rights because I was transferred to Kinross from MTU-Ionia as "Retaliation" for excersizing my 1st Amendment civil Rights for grievances, threats of litigation, Lawyers calling and sending letters to MTU non-custody staff and Administration. I was in a struggle to get the Healthcare treatment that I desperately needed at MTU, and I was transferred as "Retaliation" for that struggle and that struggle Alone. People are only sent to upper peninsula prisons as a tool of "discipline or retaliation" for pissing off Administration at lower peninsula prisons. With my medical issues, what did Kinross have to offer me as a solution to medical treatment or resolution of these issues? There is no other Justification for this transfer except "Retaliation".

(16) Warden MacLaren knew of the violence, risk of the violence, history of violence, the "target" I would have on my back as a result of my physical disabilities if I was kept or housed at Kinross Correctional facility. That is why he would not allow wheelchairs on the yard at Kinross he said. He should have had me immediately transferred out of Kinross, He knew the risk of keeping me there. He violated my civil Rights just to keep me there.

(17) (A) He violated the 8th Amendment to the U.S. constitution, under the theory of "Deliberate Indifference to my serious medical needs.

(B) He violated the American's with Disabilities Act

(18) Everything that happened Between 10/30/14 - 6/4/15 was a direct result of Warden Duncan MacLaren's Actions, and non-Actions to fullfill his duty as warden at Kinross correctional facility, to protect my Civil Rights. The results were very predictable. Warden MacLaren ignored not only my civil rights, he ignored M.D.O.C. policy Directives and operating procedures and employee work rules in place to prevent such things from happening. He was determined to make me suffer. He was very successful at that. I definately suffered. I lost "2" televisions while there, I have not ever been re-imbursed for either. I suffered physical, emotional, psychological, mental pain and suffering and Anguish. I suffered a physical Assault because he refused to transfer me even though he knew my medical/Disability needs were not being met at Kinross, none of these things would have happened if warden Duncan MacLaren fullfilled his Duty as warden. He choose not to though. Instead I was forced to suffer until ultimately he was forced by the Assault on May 17, 2015 - to ride me out as a result.

(19) Between October 30, 2014 - June 4th, 2015 while I was housed at Kinross Correctional Facility - I wrote numerous kites to Healthcare staff, numerous kites to warden Maclaren, I also wrote numerous grievances against Healthcare Services Staff (BHCS/corizon-medical providers) and Warden Maclaren and Custody staff for the treatment I received at Kinross Correctional Facility between October 30, 2014 - June 4th, 2015. I "Exhausted my Administrative Remedies" in all these grievances.

(20) I cannot walk further than 150-200 feet on a good day. It was between 1/4 - 1/2 mile to get to the yard at Kinross, I had medical Details and special Accomadation orders that were changed upon my arrival at KCF, these were done by NP - Penny Rogers. Despite these changes, i still had an Accomadation order for a wheelchair for Distance, Warden Maclaren Ignored my medical orders and Directed custody staff to prevent me from using a wheelchair to go to the yard for the entire time I was at Kinross Correctional Facility, Warden Maclaren Violated my civil rights and the Americans with Disabilities Act,

21) Despite this warden MaClaren choose to refuse to transfer me to a correctional facility that could meet my medical/Disability needs.

22) Warden Duncan Maclaren was the ultimate Authority who over-rode my medical Detail and Accomadation's. According to M.D.O.C, policy Directives and operating procedures he was in violation by not ordering my "transfer" to a different facility when he knew my medical needs/Disability needs could not be met at Kinross correctional facility.

Warden Duncan Maclaren violated my 8th Amendment civil rights under the theory of "Deliberate Indifference" to my serious medical needs and he ultimately violated and ordered custody staff to violate the Americans with Disabilities Act.

I certify that the statements made in this complaint are a accurate and True Account of the facts of this Lawsuit  Scott Sedore #210661  1/16/17

## V. Relief

State briefly and precisely what you want the court to do for you.

1) Compensatory Damages $100,000
2) Punitive Damages $150,000
3) Pay Attorney fees and costs of Lawsuit
4) Grant any other just and equitable relief this honorable court deems just and necessary.
5) Permanent Injunction against M.D.O.C. officials to protect my Civil Rights and Quit Discriminating against my Disabilities under the Americans w/Disabilities Act.

(X) 1/16/17
Date

Scott Sedore #210661
**Signature of Plaintiff**

### NOTICE TO PLAINTIFF(S)

The failure of a *pro se* litigant to keep the court apprised of an address change may be considered cause for dismissal.

I declare under Penalty of Perjury that the foregoing is True and Accurate statements, to the best of my Ability.

Scott Sedore #210661

(X) 1/16/17

-4-

(Last Revised: June 2013)