UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT SEDORE #210661,

        Plaintiff,

v.

DUNCAN MACLAREN,

        Defendants.
_____/

Case No. 2:17-cv-00007

Hon. Janet T. Neff
U.S. District Judge

## REPORT AND RECOMMENDATION

### Introduction

This is a civil rights action brought by state prisoner Scott Sedore pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff alleges that (1) Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, (2) Defendant violated the Americans with Disabilities Act (ADA), and (3) Defendant conspired with prison officials to keep Plaintiff at Kinross Correctional Facility (KCF) in order to harass him and discriminate against him. (ECF No. 1.)

This Report and Recommendation addresses Defendant's second motion for summary judgment, which he filed pursuant to Fed. R. Civ. P. 56.[1] (ECF No. 46.)

---

[1] Some of Defendant's arguments are akin to a Rule 12(b) motion to dismiss as opposed to a Rule 56 motion for summary judgment. Defendant has framed his motion as a Rule 56 motion for summary judgment. Thus, the undersigned has considered all arguments under the Rule 56 summary judgment standard.

The undersigned respectfully recommends that the Court grant Defendant's Motion for Summary Judgment and dismiss the case.

**Procedural History**

Plaintiff filed his initial complaint on January 17, 2017. (ECF No. 1.) In its initial screening opinion issued on September 5, 2017, this Court ruled that Plaintiff's complaint was not subject to dismissal based on futility, failure to state a claim or seeking monetary relief from a defendant who is immune from such relief. (ECF No. 8.)

On October 13, 2017, Defendant filed a motion for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies. (ECF No. 10.) U.S. Magistrate Judge Timothy P. Greeley issued a Report and Recommendation on May 31, 2018. Judge Greeley recommended that Defendant's Motion for Summary Judgment be denied. (ECF No. 23.) This Court issued an Opinion and Order Approving and Adopting the Report and Recommendation on September 11, 2018. (ECF No. 35.)

On December 17, 2018, Defendant filed his second motion for summary judgment. (ECF No. 46.) Plaintiff has filed a response. (ECF No. 49.)

**Factual Allegations**

In his complaint, Plaintiff alleges that he is severely disabled as the result of a 2009 car accident. (ECF No.1, PageID.4.) Because of the accident, Plaintiff has ambulation problems and is unable to stand for substantial periods of time. (*Id*.) Prior to his transfer to KCF, Plaintiff was held at the Richard A. Handlon

Correctional Facility (MTU), where he was given a special accommodation to use a wheelchair for distance movements and while talking on the phone. (ECF No.1-1, PageID.24.) As a result, Plaintiff was able to wheel himself around his unit and around a small yard at MTU, thus providing him fresh air and exercise. (ECF No. 1, PageID.5.)

In October of 2014, Plaintiff was transferred to KCF. (*Id.* at PageID.13.) Plaintiff claims that this transfer was in retaliation for Plaintiff's persistence in pursuing better health care for himself while at MTU. (*Id.*)

Plaintiff alleges that, while he was incarcerated at KCF from October 30, 2014 to June 4, 2015, Defendant, Warden Duncan MacLaren, was deliberately indifferent to Plaintiff's serious medical condition when MacLaren refused Plaintiff access to his wheelchair. (*Id.* at PageID.4.) Plaintiff claims that he was forced to walk considerable distances throughout the day, which aggravated his disability. (*Id.*)

Plaintiff alleges that the following incidents occurred and are representative of Defendant's deliberate indifference:

First, on November 3, 2014, Penny Rogers, a nurse practitioner (NP) at KCF, reduced Plaintiff's special accommodation order under the direction of Defendant so that Plaintiff could only use his wheelchair for long distances. (*Id.* at PageID.6.)

Second, on November 6, 2014, Plaintiff tried to use his wheelchair to go to the yard when a corrections officer told him that he could not be in the yard with the wheelchair. (ECF No. 1-1, PageID.31.) Plaintiff wrote grievance #KCF-1411-01207-12Z in response to the corrections officer denying him access to the yard. (*Id.*) In

Defendant's response to the grievance, Defendant noted that he interpreted Plaintiff's wheelchair accommodation as being for "distance/outside use only," meaning "to and from the chow hall, to and from Health Services, etc, not for prisoner leisure time activities such as going out to the yard." (ECF No.1-1, PageID.31.)

Third, in May of 2015, Plaintiff was transferred to a different unit within KCF. Plaintiff explains that he then became the victim of theft, and, on May 17, 2015, an assault that ultimately triggered his June 4, 2015, transfer to Muskegon Correctional Facility (MCF). (ECF No. 1, PageID.11.)

In addition, Plaintiff alleges that, on numerous occasions during his incarceration at KCF, he was subject to verbal harassment by the prison staff. (ECF No. 1, PageID.5.) Plaintiff also claims that he was never allowed into the yard or permitted to go outside unless he was on his way to a medical "call out."[2] (*Id.* at PageID.6.)

Plaintiff also alleges that Defendant conspired to keep him at KCF despite being well aware that the facility did not have the means to provide Plaintiff with necessary medical accommodations. (*Id.* at PageID.5.) In his response to Defendant's Motion for Summary Judgment, Plaintiff claims that, as a result of Defendant's actions, particularly in denying Plaintiff access to a wheelchair, he now has several new injuries and needs a permanent wheelchair accommodation. (ECF No. 49, PageID.515.)

---

[2]   The MDOC uses the term "call-out" to refer to appointments or scheduled events that prisoners have during the day.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

**Eighth Amendment Claim**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious

medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between inmates and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second

guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

A claim for the deprivation of adequate medical care under the Eighth Amendment has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-

7

obvious," *Id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

Here, Plaintiff's claim involves the adequacy of the wheelchair accommodations that he received while at KCF. Plaintiff contends that his condition was aggravated by the change to his wheelchair accommodation. In response to these claims, Defendant argues that Plaintiff has not provided any verifying medical information as to the impact of the alleged inadequacy of the accommodation, as required under *Napier*. 238 F.3d at 742. Plaintiff refers to the medical records contained in his supplemental exhibits. (ECF No. 12-1.) The medical records Plaintiff submitted to the Court to exemplify the impact of the inadequate accommodation can be summarized as follows:

- On December 22, 2010, an orthopedic surgeon examined Plaintiff and determined that the joint space in Plaintiff's right hip was diminished to such an extent to justify a total hip replacement. (ECF No. 12-1, PageID.270.)

- On January 1, 2011, the same orthopedic surgeon examined Plaintiff again, noting moderate to severe arthrosis in the right hip, secondary to the fracture-dislocation he experienced as the result of an auto-accident. (*Id.* at PageID.271.)

- Plaintiff's hip was later replaced, and at his follow up examination on March 31, 2014, the doctor noted increased pain and a severe limp pattern, though there was little change to the hip prosthesis. (*Id.* at PageID.275.) The doctor also noted that Plaintiff's legs were equal in length. (*Id.*)

- On May 19, 2016, an outside physician performed a medical consultation in which she found that there was a 3.5-inch difference in the length of Plaintiff's legs while standing. (*Id.* at PageID.273.)

- On November 9, 2016, a medical provider working for the MDOC Bureau of Health Care examined Plaintiff's pelvis and right hip and again noted little to any interval changes with his prosthesis. (*Id.* at PageID.278.) The report also noted the continued existence of a benign bone fragment in Plaintiff's hip which, though not indicated in the reports filed by Plaintiff, was found in a previous examination. (*Id.*)

- On November 21, 2016, an MDOC consultation again reported the existence of the bone fragment, which was reportedly 3.9 x 1.3 centimeters in size. (*Id.* at PageID.279.)

- On November 29, 2016, a CT scan of Plaintiff's hips indicated that there were changes to the arthroplasty in the right hip, including heterotopic ossification, spurring and the development of a cyst, as well as mild degeneration of the left hip. (*Id.* at PageID.281.) The exam report also noted degenerative arthritis of Plaintiff's spine. (*Id.*)

In addition, Plaintiff explained that while he had a wheelchair accommodation for long distances and talking on the phone prior to his time at KCF, he now has a permanent wheelchair accommodation as a result of the conditions he was subjected to while at KCF. (ECF No. 49, PageID.503.) Based on these medical records and the changes in Plaintiff's conditions, the undersigned recommends that the Court find an issue of material fact exists as to the objective component of the Plaintiff's deliberate indifference claim – specifically, whether the allegedly inadequate wheelchair accommodation was detrimental to Plaintiff's serious medical condition.

An analysis of the subjective component of Plaintiff's claim, however, leads to a different conclusion. The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very

9

purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The record shows that Defendant had substantial knowledge of the severity of Plaintiff's disability because he was transferred to KCF with multiple special accommodations and retained a wheelchair accommodation while at KCF. (ECF No. 1-1, PageID.24-26.) However, Plaintiff has not provided any evidence that Defendant was aware of the inadequacy of the accommodation or the existence of a substantial risk of serious harm. When Plaintiff's accommodations were altered at KCF, they were altered by a Qualified Health Professional pursuant to MDOC Operating Procedure 04.06.160. (*Id.* at PageID.26.) Plaintiff provided no evidence that Defendant – the Warden at KCF – did anything other than enforce this medical determination, thus precluding Plaintiff from using a wheelchair in the yard only as a measure of safety. (Dep. of Plaintiff, ECF No. 47-1, PageID.498.)

As previously mentioned, Plaintiff filed grievances relating to his belief that the accommodation was insufficient, and Defendant denied those grievances. However, Defendant's denials were based on the determinations of a Qualified Health Professional. (ECF No. 1-1, PageID.31.) As mentioned above, differences in judgment between Plaintiff and NP Rogers regarding Plaintiff's need for certain accommodations are not sufficient to state a deliberate indifference claim. Further, there is no evidence to support Plaintiff's claim that Defendant believed that KCF

10

was unable to accommodate Plaintiff appropriately, let alone that Defendant maliciously refused to either improve the conditions that Plaintiff was subject to or transfer him to a facility better suited for accommodating his disability. (ECF No. 1, PageID.5.)

Accordingly, the undersigned respectfully recommends that this Court find that there are no issues of material fact as to the subjective component of Plaintiff's deliberate indifference claim.

## Qualified Immunity

Defendant seeks summary judgment based on qualified immunity. Government officials, performing discretionary functions, are generally shielded from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-233. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

As stated above, the record shows that Defendant did not act with deliberate indifference to Plaintiff's serious medical needs. Therefore, no constitutional violation occurred. Accordingly, the undersigned respectfully recommends that this Court find Defendant is entitled to qualified immunity from civil damages as a government official performing his discretionary functions.

## Americans with Disabilities Act

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th

Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). As such, the Court should assume that Plaintiff means to bring suit against Defendant in his official capacity.

Because there is no direct evidence of discrimination in this case, Plaintiff must adhere to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In accordance with this framework, Plaintiff must first establish a prima facie case of discrimination in violation of Title II of the ADA. *Id.* It is undisputed that Plaintiff has a disability and that, when acting as a government official, Defendant is subject to the ADA. The question is whether Defendant, acting in his official capacity, prevented Plaintiff from enjoying certain benefits at KCF *based on Plaintiff's disability*.

13

Plaintiff contends that, in refusing to allow him to use a wheelchair in the yard, Defendant denied Plaintiff benefits that other inmates were afforded, such as fresh air and exercise, based solely on his disability. However, Defendant has articulated a legitimate, nondiscriminatory reason for that action pursuant to the *McDonnell-Douglas* framework: as previously stated, Defendant did not allow the wheelchair to enter the yard because prisoners in the yard may remove pieces of the wheelchair in order to use them as weapons.[3] (ECF No. 47, PageID.478.)

Based on Defendant's constitutional obligation to protect the inmates at KCF and Plaintiff's failure to allege facts showing that Defendant was, in fact, motivated by a discriminatory reason rather than the need to promote safety, the undersigned respectfully recommends that this Court find that no issues of material fact exist as to Plaintiff's ADA claim.

### Eleventh Amendment Immunity

Defendant also asserts that Plaintiff's ADA claim against Defendant in his official capacity is barred by Eleventh Amendment sovereign immunity. The Eleventh Amendment restricts individuals from suing their State in federal court. *See Welch v. Texas Dep't of Highways & Public Trans.*, 483 U.S. 468, 472. *See also Bagsby v. Gehres*, 2002 U.S. Dist. LEXIS 6795 \* (E.D. Mich. Feb. 20, 2002) *adopted*, U.S. Dist. LEXIS 5837 (E.D. Mich. Apr. 4, 2002). However, that restriction is not

---

[3] As the Warden at KCF, Defendant has a constitutional obligation to protect the prisoners within his facility. *See Wilson v. Seiter*, 501 U.S. 294 (1991). *See also Farmer v. Brennan*, 511 U.S. 825, 833 (1994). *See also Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

absolute in the context of the ADA. Section 5 of the Fourteenth Amendment established that Congress could enforce the amendment through legislation including "the creation of federal causes of action against states in federal court." *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 810 (6th Cir. 2002). In *Popovich*, the Sixth Circuit determined that, in the context of Title II of the ADA, Eleventh Amendment immunity bars an ADA suit where the suit pertains to the Equal Protection Clause, but not where the suit pertains to the Due Process Clause. *Id.* at 811-13 (noting that the Supreme Court "held that Section 5 of the Fourteenth Amendment does not give Congress the power to enforce the Equal Protection Clause by authorizing federal employment discrimination suits against states based purely on *disability*).

Here, Plaintiff's claim appears to pertain to the Equal Protection Clause. Plaintiff claims that Defendant inflicted cruel and unusual punishment on Plaintiff by forcing him to navigate his unit without a wheelchair and cutting off his access to the benefits of the yard. (ECF No. 47-1, PageID.495.) However, Defendant argues that Plaintiff's ADA claim is based instead in equal protection as the claim is based in his inability to access the benefits that other inmates enjoyed in the yard. (ECF No. 47, PageID.489.) Based on Plaintiff's allegations, the undersigned agrees that his ADA claim appears to be based on equal protection rather than cruel and unusual punishment. Accordingly, the claim against Defendant in his official capacity is barred by the Eleventh Amendment.

**Additional Claims**

As previously mentioned, the initial review of Plaintiff's Complaint established that the complaint was not subject to dismissal based on any failure to state a claim or because monetary relief was sought against a defendant who was immune from such relief. However, Defendant's Motion for Summary Judgment contends that Plaintiff sufficiently alleged Eighth Amendment and ADA claims, and that the rest were only "cursory legal theories." (ECF No. 47, PageID.480.) Based on the allegations set forth in the complaint, many of which involve claims that Defendant conspired to punish Plaintiff and keep Plaintiff at KCF rather than transfer him to a facility capable of accommodating his needs, it would appear that Defendant is referring to claims of civil conspiracy within Plaintiff's Complaint.

It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under 42 U.S.C. § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989). This suit concerns only one Defendant, and Plaintiff has adduced no evidence of any plan regarding Plaintiff's treatment. In the opinion of the undersigned, Plaintiff has not sufficiently plead a claim of civil conspiracy.

### Recommendation

The undersigned is sympathetic to Plaintiff's suffering and recognizes Plaintiff's numerous conditions negatively impact his health and wellbeing. Nonetheless, I respectfully recommend, first, that this Court find that there are issues of material fact as to the objective component of Plaintiff's Eighth Amendment deliberate indifference claim, but not as to the subjective component of that claim. Accordingly, I recommend that this Court dismiss Plaintiff's Eighth Amendment deliberate indifference claim.  Second, as a result, this Court should rule that Defendant is entitled to qualified immunity.  Third, the undersigned respectfully recommends that this Court find that no issues of material fact exist as to Plaintiff's ADA claim, and, alternately, that Plaintiff's claim against Defendant in his official capacity under Title II of the Americans with Disabilities act is barred by Eleventh Amendment immunity.  Finally, I respectfully recommend that this Court rule that Plaintiff has not sufficiently plead a claim of civil conspiracy.

Acceptance of this recommendation will result in the dismissal of this case.


Dated:  June 27, 2019                    /s/ *Maarten Vermaat*
                                         MAARTEN VERMAAT
                                         U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).